CHARLES JEROME PERKINS *v.* STATE OF INDIANA.

[No. 2-675A158. Filed November 16, 1976.]

*David L. Martenet,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *K. Richard Payne,* Deputy Attorney General, for appellee.

SULLIVAN, J.—Perkins appeals from his conviction for the crime of entering with intent to commit a felony. Ind. Ann. Stat. 35-13-4-5 (Burns Code Ed. 1975).

Perkins contends that the evidence failed to prove that his entry was unauthorized and somewhat alternatively that the evidence does not disclose that he had a felonious intent at the time he made entry into the premises.

Taken most favorably to the State, the facts disclose the following: approximately three weeks prior to the occurrence in issue, Victoria McGlauchlen (Vickie), at that time a part-time employee of Rose Park Press, Inc., (Rose Park), a printing company, persuaded her brother, John McGlauchlen, (John), also an employee of Rose Park, to meet with Perkins, with whom she was living. At this initial meeting, Perkins and John, a printing press operator for Rose Park, discussed various ways to make money, including the possibility of printing checks. John indicated his ability to do so but

refused. Later, Perkins mentioned to Vickie that he was in need of money and that he had a general plan which involved checks to which John might have access by reason of his employment. Thereafter on June 7, 1974 John visited Vickie's apartment at which time Perkins discussed at some length alternative ideas for obtaining checks. After a few hours of discussion, it was decided that all present in the apartment—John, Vickie, their sister Candy, Vickie's child, and Perkins would go to Rose Park "to look and see if we could do it."

They arrived at Rose Park late in the evening after the normal business hours and gained entrance by using John's key. Many of the Rose Park employees had such access keys. Once inside and after John explained the purposes and methods of most of the printing machinery to Perkins, Perkins drew John's attention to some pre-printed blank checks bearing the name Producers Marketing Association, Inc. John thereupon explained that these pre-printed checks had been incorrectly printed, and the process by which the errors would be corrected. Then at Perkins' request John corrected twelve (12) of the flawed checks. Perkins placed these checks in an envelope which he slipped into his pocket. The group then left the building.

Perkins first asserts that the State failed to prove that the entry was unauthorized and trespassory. This assertion presupposes that IC 35-13-4-5, *supra,* requires such proof and, as a corollary, that consent by an owner or lawful possessor to the entry precludes conviction of the charge. In this regard, Perkins contends that John was authorized to enter the business premises and that therefore Perkins' accompanying entry was not trespassory and not unlawful even if he had an evil intent.

Perkins seeks legal support in *Tinsley* v. *State* (1975), 164 Ind. App. 683, 330 N.E.2d 399, wherein the court stated:

"Although the evidence herein contains no direct showing of a lack of authorization of Tinsley's entry into the

business-place, the absence of such authorization could have been inferred by the trier of fact from the circumstances surrounding such entry." 330 N.E.2d at 401. *See* also *Turley* v. *State* (1972), 153 Ind. App. 156, 286 N.E.2d 223.

We do not construe this language to require that the State prove the absence of authorization, particularly since the *Tinsley* court held specifically that the statute "requires only proof of an entry accompanied by felonious intent." 330 N.E.2d at 401. In that case, the issue concerned the absence of intent, and it was held that such intent was properly inferable from the fact of an unauthorized entry and other implicating circumstances. *See* also *Lisenko* v. *State* (1976), 265 Ind. 488, 355 N.E.2d 841; *Thomas* v. *State* (1970), 255 Ind. 131, 263 N.E.2d 158; *Tuggle* v. *State* (1969), 253 Ind. 279, 252 N.E.2d 796; *Davis* v. *State* (1968), 251 Ind. 133, 239 N.E.2d 601; *Wynn* v. *State* (1974), 162 Ind. App. 521, 319 N.E.2d 885; *Cabell* v. *State* (1974), 160 Ind. App. 406, 312 N.E.2d 142. *Compare Faulkner* v. *State* (1973), 260 Ind. 82, 292 N.E.2d 594.

Here, the felonious intent was independently established. The nature of the entry was, therefore, not essential to the establishment of intent.

Certainly, if evidence were to demonstrate that entry was authorized and if there were no other evidence to establish a felonious intent, a conviction would not lie. *See Easton* v. *State* (1967), 248 Ind. 338, 228 N.E.2d 6. If entry, without regard to authorization, has been established and is coupled with independent evidence of felonious intent, the crime has been proved. Such is the instance before us.

The absence of authorization is not an essential element of the crime. Its importance lies only when the matter of intent is in doubt and the nature and manner of entry is viewed as circumstantial evidence of the felonious intent. *See Lisenko* v. *State, supra.*

The essential element of entry is not meaningless surplusage, however. Entry is the time reference at which point

the felonious intent must be present. *Farno* v. *State* (1974), 159 Ind. App. 627, 308 N.E.2d 724; *Nichols* v. *State* (1973), 157 Ind. App. 605, 301 N.E.2d 246. Furthermore, if there were no such requirement, the statute might well be viewed as an attempt to punish a mere state of mind. The entry constitutes the overt act which must accompany felonious intent. *Chandler* v. *State* (1895), 141 Ind. 106, 39 N.E. 444.

We are not here confronted with a situation in which a felonious intent was formulated subsequent to an entry made pursuant to authorization and for a valid purpose consistent with that authorization. In such instance consent would, of course, be relevant to demonstrate that the felonious intent did not exist at the time of the entry. We therefore turn to a consideration of Perkins' alternative contention that the evidence was insufficient to establish the existence of a felonious intent at the moment of entry.

Perkins assesses the evidence in a manner most favorable to himself in that he contends that the participants and observers went to Rose Park to "examine the premises", and that only after entry were the checks discovered, imprinted and removed from the premises by him.

The evidence hereinbefore set forth, must be viewed in a light most favorable to the judgment. That evidence clearly permitted a reasonable determination that the sole purpose for the entry was to accomplish the very result which was in fact accomplished.

The judgment is affirmed.

Buchanan, P.J. and Hoffman, J. (participating by designation), concur.

NOTE.—Reported at 356 N.E.2d 1202.